**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TIANNA KOTCHMAR, individually<br>and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>       v.<br><br>MOVIE TAVERN PARTNERS, LP, *et al.,*<br><br>          Defendants. | Civil Action No.: 15-cv-04061 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINITIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION
<u>SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………..iii

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND AND LITIGATION HISTORY ....................................... 3

III. KEY PROVISIONS OF THE SETTLEMENT .................................................. 6

    A. THE PROPOSED SETTLEMENT CLASS ................................................... 7

    B. MONETARY TERMS ......................................................................... 7

    C. DISMISSAL AND RELEASE OF CLAIMS ................................................. 8

IV. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS PROPER ................... 9

    A. RULE 23(A) REQUIREMENTS ARE SATISIFIED ...................................... 10

        1. Rule 23(a)(1) – Numerosity .................................................... 11

        2. Rule 23(a)(2) – Commonality .................................................. 11

        3. Rule 23(a)(3) --"Typicality" ..................................................... 12

        4. Rule 23(a)(4) – "Adequacy" .................................................... 13

    B. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER
       RULE 23(B) ...................................................................................... 15

    C. CLASS NOTICE SATISFIES RULE 23 & DUE PROCESS .......................... 18

V. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ....................... 20

    A. THE STANDARDS FOR FINAL APPROVAL ............................................ 20

        1. Complexity, Expense, And Likely Duration Of The Litigation .............. 22

        2. Reaction Of The Class To The Settlement ............................... 23

3.      Stage Of The Proceedings And The Amount Of Discovery
        Completed ................................................................................. 24

4.      Risks Of Establishing Liability And Damages
        (*Girsh* factors 4 and 5) ............................................................ 25

5.      Risks Of Maintaining The Class Action Through The Trial ................... 26

6.      Ability Of The Defendant To Withstand A Greater Judgment................. 27

7.      Range Of Reasonableness Of The Settlement Fund In Light Of The Best
        Possible Recovery And All The Attendant Risks Of Litigation
        (*Girsh* factors 8 and 9) ........................................................... 27

B.      THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE
        CLASS ...................................................................................... 28

VI.     CONCLUSION............................................................................ 30

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Prac. Litig.*,
    263 F.R.D. 226 (E.D. Pa. 2009)................................................................................29

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................10, 15

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    133 S. Ct. 1184 (2013).........................................................................................15

*Austin v. Pennsylvania Dep't of Corrs.*,
    876 F.Supp. 1437 (E.D. Pa. 1995) ....................................................................22

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994)..............................................................................11, 12

*Barnes v. Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998)................................................................................10

*Bergman v. Kindred Healthcare, Inc., et al.*,
    No.: 1:10-cv-00191 (N.D. Ill.) ...........................................................................17

*Bernhard v. TD Bank, N.A.*,
    No. 08-4392, 2009 U.S. Dist. LEXIS 92308 (D.N.J. Oct. 5, 2009) .....................24

*Bonett v. Educ. Debt Servs.*,
    No. 01-6528, 2003 U.S. Dist. LEXIS 9757 (E.D. Pa. May 9, 2003)...............29, 30

*Briggs v. Hartford Fin. Serv. Grp., Inc.*,
    No. 07-cv-05190, 2009 WL 2370061 (E.D. Pa. July 31, 2009) ...........................29

*In re Budeprion XL Marketing & Sales Litig.*,
    MDL No. 2107, 2012 WL 2527021 (E.D. Pa. July 2, 2012)................................13

*Buzoiu v. Risk Mgmt. Alt., Inc.*,
    No. 03-cv-3579, 2004 WL 1505061 (E.D. Pa. June 14, 2004)..............................14

*In re Centocor, Inc. Secs. Litig. III*,
    No. 98-cv-260, 1999 WL 54530 (E.D. Pa Jan. 27, 1999)................................12, 13

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
    269 F.R.D. 468 (E.D. Pa. 2010)..........................................................................29

*Cohen v. Chi Title Ins. Co.*,
    242 F.R.D. 295 (E.D. Pa. 2007)..........................................................................11

*Contawe v. Crescent Heights of Am., Inc.*,
    No. 04-cv-2304, 2004 WL 2966931 (E.D. Pa. Dec. 21, 2004).................................................12

*In re Corel Corp. Secs. Litig.*,
    206 F.R.D. 533 (E.D. Pa. 2002).................................................................................11

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)........................................................................................24

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012)......................................................................................13

*In Re Diet Drugs Prods. Liab. Litig.*,
    553 F. Supp. 2d 422 (E.D. Pa. 2008).........................................................................29

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010)......................................................................................20

*Faile v. Lancaster County*,
    No. 0:10-cv-02809, 2012 U.S. Dist. LEXIS 189610 (D. S.C. Mar. 8, 2012).........................17

*In re Flonase Antitrust Litigation*,
    No. 08-cv-3149, 2013 WL 2915606 (E.D. Pa. June 14, 2013)........................................19

*Gates v. Rohm and Haas*,
    265 F.R.D. 208 (E.D. Pa. 2010).................................................................................11

*In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).............................................................................20, 26, 27

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)........................................................................... *passim*

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004).................................................................................26

*Jackson v. Southeastern Pennsylvania Trans. Auth.*,
    269 F.R.D. 168 (E.D. Pa. 2009).............................................................................11, 27

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
    Master File: 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)...............17, 24

*Knepper v. Rite Aid Corp.*,
    675 F.3d 249 (3d Cir. 2012)......................................................................................17

*Lake v. First Nationwide Bank*,
    900 F.Supp. 726 (E.D. Pa. 1995)...............................................................................22

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) .................................................................................23

*Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001), cert. denied, 534 U.S. 973 (2001) .......................................16

*MacNeal v. Columbine Exploration Corp.*,
   123 F.R.D. 181 (E.D. Pa. Dec. 1, 1988) ............................................................................16

*McCall v. Drive Fin. Servs., L.P.*,
   236 F.R.D. 246 (E.D. Pa. 2006)...................................................................................10, 15

*Moore v. Comcast Corp.*,
   No. 08-cv-773, 2011 WL 238821 (E.D. Pa. Jan. 24, 2011)..................................................29

*New Directions Treatment Servs. v. City of Reading*,
   490 F.3d 293 (3d Cir. 2007)...............................................................................................14

*Parks v. Portnoff Law Associates, Ltd.*,
   210 F.R.D. 146 (E.D. Pa. 2002)..........................................................................................10

*Perry v. FleetBoston Fin. Corp.*,
   229 F.R.D. 105 (E.D. Pa. 2005)..........................................................................................24

*Pro v. Hertz Equipment Rental Corp.*,
   No. 06-cv-3830, 2013 WL 3167736 (D.N.J. June 20, 2013)................................................22

*In Re Prudential Ins. Co. of Am. Sales Litig.*,
   148 F.3d 283 (3d Cir. 1998)................................................................................. *passim*

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   177 F.R.D. 216 (D.N.J. 1997).............................................................................................18

*Reich v. Chez Robert, Inc.*,
   28 F.3d 401 (3d Cir. 1994)...................................................................................................5

*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300 (E.D. Pa. June 26, 2012) ...........................................................................13

*Rouse v. Comcast Corp.*,
   No. 14-1115, 2015 U.S. Dist. LEXIS 49347 (E.D. Pa. Apr. 14, 2015)............................25, 26

*In re Schering-Plough Corp.*,
   No. 08-1432, 2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012).....................................23

*In re School Asbestos Litig.*,
   921 F.2d 1330 (3d Cir. 1986)..............................................................................................20

*Schwartz v. Dana Corp.*,
196 F.R.D. 275 (E.D. Pa. 2000) .................................................................................... 11

*Serrano v. Sterling Testing Systems, Inc.*,
711 F. Supp.2d 402 (E.D. Pa. 2010) .......................................................................... 27, 29

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010) ......................................................................................... 14

*Slomovics v. All for a Dollar, Inc.*,
906 F. Supp. 146 (E.D.N.Y. 1995) .............................................................................. 23

*Southeastern Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
No. 12-cv-0993, 2012 WL 3597179 (M.D. Pa. Aug. 20, 2012) ............................... 13

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ......................................................................................... 11

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ......................................................................................... 11

*Tiro v. Public House Invs.*,
LLC, 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013) ........................... 24

*Varacallo v. Mass. Mutual Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) ...................................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .................................................................................................. 11

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .................................................................................. 12, 20, 21

*Weiss v. York Hosp.*,
745 F.2d 786 (3d Cir. 1984) ......................................................................................... 13

*Young v. Tri County Sec. Agency, Inc.*,
No. 13-cv-5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014) ................................... 13

**Statutes**

Fair Labor Standards Act of 1938 ...................................................................... *passim*

Pennsylvania Minimum Wage Act .................................................................. 3, 5, 9, 21

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Fed. R. Civ. P. 23(a) ............................................................................................... *passim*

Fed. R. Civ. P. 23(b) ...............................................................................................10, 15, 30

Fed. R. Civ. P. 23(e) ...............................................................................................18, 20, 21

Fed. R. Civ. P. 23(g) ...............................................................................................14

Fed. R. Civ. P. 30(b)(6)............................................................................................6

Plaintiff Tianna Kotchmar ("Plaintiff") submits this brief in support of her unopposed motion for final approval of the class and collective action Settlement reached by the Parties in this matter.[1]  With this unopposed motion, Plaintiff is filing the Settlement Agreement and related documents as well as supporting declarations and a proposed Final Approval Order.  This Court preliminarily approved the Settlement on March 4, 2016.  As set forth below, all conditions required for final approval have been met.

## I.      INTRODUCTION

Plaintiff seeks final approval of the proposed Settlement which will resolve claims that have been pending before this Court.  The Settlement consists of a cash payment by Defendants of $750,000.00 which, after deductions for court-approved attorneys' fees and reasonable litigation costs, fees and expenses for the Claims Administrator, and any court-approved Service Payment to the Plaintiff, shall be distributed to Class Members who participate in the Settlement ("Participating Settlement Class Members") in accordance with the formula for determining the "Settlement Payment" set out in the Settlement Agreement.  *See* Settlement Agreement, at §4.7.  The foregoing parameters of the Settlement were conveyed to members of the Settlement Class in the manner described in the Settlement Agreement.

Accordingly, the proposed Settlement is now ready for final review, as Plaintiff has fully complied with the terms of the Court's Preliminary Approval Order, dated March 4, 2016, including providing notice of the proposed Settlement to the Settlement Class.   After mailing the approved form of Class Notice to 782 members of the Settlement Class, Class Counsel has received  no  objections  to  any  aspect  of  the  proposed  Settlement,  including  the  requested

---

[1] All capitalized terms used in this brief that are also defined in the Settlement Agreement shall have the same meaning as set forth in the Settlement Agreement.  Although previously provided to the Court, for sake of thoroughness, Class Counsel is resubmitting the Settlement Agreement as Exhibit 1 to the Declaration of Gerald D. Wells, III ("Wells Decl.").  The Wells Decl. is incorporated herein by reference.

attorneys' fee and the proposed Service Payment to Plaintiff, and only a handful of Class Members have indicated that they wish to opt out of the Settlement..

The Parties only reached the Settlement after vigorous, arms-length settlement negotiations, which included two settlement conferences before Magistrate Judge Marilyn Heffley, and substantial further settlement negotiations between the Parties. Every aspect of this Settlement was meticulously negotiated by experienced counsel.

This Settlement is a good result in light of the factual and legal risks to the class of continued litigation. Absent the Settlement reached here, there is no guarantee that Plaintiff would have prevailed at trial. Consequently, this Settlement removes the possibility of years of litigation including possible appellate arguments. Moreover, as Defendant had changed its policies during the statutory period covered by this Action which effectively cured the employment practices complained of herein, the statutes of limitations on any potential recovery for the Class Members would likely have expired absent this Litigation. Indeed, had this Settlement not been achieved, Plaintiff and the members of the Settlement Class faced the very real risk that they would recover nothing.

Specifically, Plaintiff requests that the Court enter the accompanying proposed Order of Final Judgment that, among other things, will grant final approval of the Settlement Agreement and certify the proposed Settlement Class. For the reasons set forth in greater detail below, the Settlement is fair, reasonable and adequate to the Settlement Class, and satisfies all of the criteria that courts in this Circuit routinely apply for the approval of class action settlements. *See, e.g. In Re Prudential Ins. Co. of Am. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

## II.       FACTUAL BACKGROUND AND LITIGATION HISTORY [2]

Plaintiff filed this case on July 23, 2015, as a class and collective action against her employers for their alleged violations of: (1) the minimum wage requirements of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201 et seq. ("FLSA"); and (2) the minimum wage requirements of the Pennsylvania Minimum Wage Act ("PMWA").  Plaintiff alleges that Defendants violated the FLSA and PMWA by systematically and willfully denying their Tipped Employees certain wages due and owing.  Specifically, Plaintiff alleges Defendants violated the aforementioned laws by failing to satisfy the notice requirements of the tip credit provisions of the FLSA and PMWA.

In limited circumstances, the FLSA allows for an employer to take a tip credit and pay its tipped employees less than minimum wage, provided that the employee's tips received from customers plus the tip credit paid by the employer equals at least the applicable minimum wage.  According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

However, in order to legally utilize the tip credit provisions of the FLSA, employers must satisfy certain black and white requirements.  In order to claim the tip credit, an employer must demonstrate that they have complied with each and every one of the five enumerated provisions set forth in Fact Sheet #15.[3]  Failure to comply with any one of the enumerated provisions

---

[2] Much of the Sections II and III were previously submitted to the Court in Plaintiff's memorandum in support of preliminary approval (Dkt. No. 26).  For ease of reference, Plaintiff is resubmitting the history of the Litigation and the terms of the Settlement for the Court's convenience.

[3] Per Fact Sheet #15: The employer must provide the following information to a tipped employee before the employer may use the tip credit: 1) the amount of cash wage the employer is paying a tipped employee, which must be at least $2.13 per hour; 2) the additional amount claimed by the employer as a tip credit, which cannot exceed

eliminates the employer's ability to claim any tip credit, resulting in the full minimum wage of $7.25 being due and owing.

First and foremost, an employer must explicitly notify the employee as to (i) the cash wage being paid by the employer and (ii) the amount of the tip credit being claimed by the employer.  Second, the employer must inform the employee that the employee must still earn the mandated minimum wage of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.  An employer bears the burden of showing that it has satisfied the notification requirement of informing its employees that tips are being credited against the employee's hourly wage.  If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.  In addition to notifying its employees of its intention to take the tip credit, an employer must also inform its employees that all tips received by the employee are to be retained by the employee (except for those tips that are part of a valid tip pooling arrangement) in order to claim a tip credit.

Moreover, the employer must ensure that the employee earned enough in tips to cover the tip credit claimed by the employer.  Accordingly, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference.  Stated another way, if a tipped employee earns less than $4.42 per hour in tips (the maximum tip credit permissible under Pennsylvania law where the employer pays the employee $2.83 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.83 per

---

$5.12 (the difference between the minimum required cash wage of $2.13 and the current minimum wage of $7.25); 3) that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee; 4) that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and 5) that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.

hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

In her complaint, Plaintiff alleged that Defendants failed to satisfy the requirements of Fact Sheet # 15.  Further, Plaintiff alleged that Defendants failed to explicitly notify her that it was taking a tip credit in the amount of $1.75 per hour against its requirement to pay the minimum wage of $7.25.  Simply stated, Plaintiff alleged Defendants failed to satisfy multiple provisions of the notice requirements for taking the tip credit.  An employer must only fail to satisfy one provision to be held liable for violating the tip credit.  *See Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) (holding that when an employer failed to comply with one or more provision of Section 203(m), "then no tip credit can be taken and the employer is liable for the full minimum-wage").

Shortly after commencement of this Litigation, counsel for Defendants contacted counsel for Plaintiff and produced limited documents that purported to show that Defendants had a policy in place to notify Tipped Employees of the tip credit being taken including having Tipped Employees execute a "Tip Credit" acknowledgment form.  Counsel for Defendants believed these documents evidenced that Defendants complied with the tip credit notifications of the FLSA and PMWA.  Importantly, Defendants were unable to produce any evidence that Plaintiff had executed any such form, nor state with certainty when Defendants began implementing these forms.  Thereafter, Defendants filed their Answer on September 21, 2015.  On October 15, 2015, the Parties submitted to the Court a Joint Proposed Discovery Plan.  Four days later, the Court held an Initial Pretrial Conference.  At this conference, the Parties addressed with the Court Defendants' representations and the Court inquired as to whether there was a way to streamline this litigation.  Thereafter, the parties engaged in discovery during which time Plaintiff served

document requests, interrogatories and requests for admissions on each Defendant.  Plaintiff also served a notice of deposition for each Defendant pursuant to Fed. R. Civ. P. 30(b)(6).

On October 21, 2015 the Court issued an order setting a settlement conference for January 4, 2016.   Prior to the settlement conference, Plaintiff's counsel requested from Defendants the material that was discussed after the Initial Pretrial Conference.  On January 4, 2016, the parties participated in a settlement conference before Magistrate Judge Marilyn Heffley.  Prior to and throughout the settlement conference Defendants contested their liability and contended they fully complied with all the provisions of Fact Sheet #15, including the tip credit notification requirements.  While productive, that settlement conference did not lead to resolution as Defendants had not yet produced the information requested by counsel for Plaintiff.

Magistrate Judge Marilyn Heffley then requested that Plaintiff's counsel identify precisely all the information it needed in order to formulate a settlement demand.  Accordingly, that settlement conference led to a further exchange of information and a subsequent settlement conference with Magistrate Judge Heffley on January 22, 2016, after which Magistrate Judge Heffley proffered a mediator's proposal in order to bridge the gap between the Parties.  While the conference led to the broad outline of settlement terms necessary to resolve all claims that were or could have been asserted in the Litigation, it took several more weeks of intense negotiations before the parties reached the final terms of the settlement that are memorialized in the Settlement Agreement.

## III.   KEY PROVISIONS OF THE SETTLEMENT

Plaintiff respectfully submits that the proposed Settlement represents an excellent recovery for the proposed class.   For purposes of this motion, the material terms of the Settlement are set forth below.   A complete description of the terms and conditions of the Settlement are contained in the Settlement Agreement.

A.    THE PROPOSED SETTLEMENT CLASS

Through the Settlement Agreement, the Parties stipulate to certification of the Rule 23 class for settlement purposes only. The Settlement Agreement covers all current and former Tipped Employees who worked at a Movie Tavern location in the Commonwealth of Pennsylvania at any time between July 23, 2012 and December 31, 2015 and worked at least one week without having previously signed a Tip Credit Notification Form.  All Settlement Class Members who do not opt out of the Settlement shall be members of the Rule 23 class (the "Settlement Class") and shall, by operation of law, deemed to have released their Pennsylvania state wage claims.  All Settlement Class Members who timely submit valid a Claim Form and become Participating Settlement Class Members shall be deemed to have released their federal wage claims under the FLSA.

B.    MONETARY TERMS

The proposed "Settlement Amount" consists of cash in the amount of Seven Hundred Fifty Thousand U.S. Dollars and No Cents ($750,000.00).  *See* Settlement Agreement at § 2.18. In accordance with the Settlement Agreement, the Claims Administrator shall make deductions from the Settlement Amount for court-approved attorneys' fees and reasonable litigation costs, fees and expenses for the Claims Administrator, and court-approved Service Payment for the Plaintiff, in recognition of the risks and benefits of her participation and substantial services she performed.  *See* Settlement Agreement, at §4.15.  The amount remaining after these deductions (the "Net Settlement Amount) shall be distributed to Class Members who participate in the Settlement ("Participating Settlement Class Members") in accordance with the formula for determining the "Settlement Payment" set out in the Settlement Agreement.  *See* Settlement Agreement, at §4.7.  The Claims Administrator will make all legally mandated payroll deductions prior to distributing the settlement payments to Participating Settlement Class

Members.  The proposed formula for distributing the Settlement's proceeds prorates the recovery among Participating Settlement Class Members according to how many hours they are recorded as having worked, and provides as follows:  For each Participating Settlement Class Member, the Claims Administrator will multiply the difference between the full minimum wage ($7.25) and the hourly rate actually paid by Defendants to that Participating Settlement Class Member.  The Individual Damage Amount for all Participating Settlement Class Members will then be added together by the Claims Administrator to determine the "Participating Settlement Class Members' Total Damage Amount."  The Net Settlement Amount will be divided by the Participating Settlement Class Members' Total Damage Amount.  The resulting fractional amount will then be multiplied by a Participating Individual Damage Amount to determine that Participating Settlement Class Member's Settlement Payment.     *Id*. at § 4.7.   In accordance with the Settlement Agreement, Class Counsel will seek the Court's approval for payment of a "Service Payment" to the Plaintiff in the amount of $5,000.  *Id*. at §4.15.  This Service Payment shall be in addition to the distribution received from the Net Settlement Amount, as described above, and shall not be opposed by Defendants.

Any checks not properly or timely negotiated by a Participating Settlement Class Member within 90 days of issuance shall be deemed voided.  Unclaimed funds due to voided checks shall be subject to a Cy Pres distribution.  *Id*. at §§ 4.12(E) and (G).

### C.    DISMISSAL AND RELEASE OF CLAIMS

Upon the Effective Date, the Participating Settlement Class Members (including their representatives, heirs, executors, spouses, guardians, successors, estates, attorneys, agents and assigns) will be deemed to have completely released and forever discharged Defendants from any and all federal wage-related claims of any kind, including but not limited to any claims pursuant to the Fair Labor Standards Act that any Participating Settlement Class Member has,

had, might have or might have had against any of the Released Persons based on any act or omission that occurred from the inception of the Class Period until the date the individual signed the Tip Credit Notification Form (the "FLSA Released Claims"), along with the PA Released Claims. *See* Settlement Agreement at § 5.1(C).

Upon the Effective Date, all Settlement Class Members who do not opt-out of the Settlement (including their representatives, heirs, executors, spouses, guardians, successors, estates, attorneys, agents and assigns) will be deemed to forever and fully release and discharge Defendants, and release and hold harmless the Released Persons, from any and all Pennsylvania wage-related claims of any kind, including but not limited to any claims pursuant to the PMWA and PWPCL that any of the Releasing Persons has, had, might have or might have had against any of the Released Persons based on any act or omission from the inception of the Class Period until the date the individual signed the Tip Credit Notification Form, in any way related to any of the facts or claims that were alleged or that could have been alleged in the Litigation or by reason of the negotiations leading to this Settlement, even if presently unknown or un-asserted (the "PA Released Claims"). *Id.* at § 5.1(A).

The Settlement Class was apprised of these elements comprising the Settlement in the Class Notice which was previously approved by this Court. *See* Wells Decl. at ¶¶ 45-52. Notably, not a single Settlement Class Member objected to any aspect of the proposed Settlement.[4] *See* Wells Decl. at ¶ 53.

## IV.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS PROPER

Plaintiff requests that the Court certify the following proposed class for settlement purposes only, pursuant to the Settlement Agreement: all current and former Tipped Employees

---

[4] As of the date of this filing, eight (8) Settlement Class Members have indicated that they intend to opt out of the Settlement.

who worked at Movie Tavern in the Commonwealth of Pennsylvania between July 23, 2012 and December 31, 2015, who worked at least one week prior to executing a Tip Credit Notification Form, and did not timely request exclusion from the Settlement prior to the Bar Date.

This proposed Settlement Class would be certified under Federal Rule of Civil Procedure 23, which requires that a named plaintiff satisfy the four elements of Rule 23(a), and one or more requirements of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *McCall v. Drive Fin. Servs.*, L.P., 236 F.R.D. 246, 249 (E.D. Pa. 2006); *Parks v. Portnoff Law Associates, Ltd.*, 210 F.R.D. 146, 149 (E.D. Pa. 2002).

Certification of the Settlement Class is warranted here for a number of reasons.  Most significantly, before entering the Preliminary Approval Order, this Court examined the record and preliminarily certified the Settlement Class.  *See* Dkt. No. 37.  Nothing has changed in the record that would compel the Court to reach a different conclusion with respect to the final, rather than preliminary, approval of the Settlement Class.  Finally, as set forth below, this case satisfies every requirement for certifying a Settlement Class pursuant to Fed. R. Civ. P. 23.

### A.       RULE 23(A) REQUIREMENTS ARE SATISFIED

Rule 23(a) provides that a class should be certified if (1) the class members are so numerous that joinder of all members is impracticable; (2) the action addresses questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *see also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140-141 (3d Cir. 1998); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308-09 (3d Cir. 1998) ("*Prudential II*").  These four elements are referred to in the short-hand as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

representation. *In re Corel Corp. Secs. Litig*., 206 F.R.D. 533, 539 (E.D. Pa. 2002).  Here, all four elements are satisfied for purposes of certifying the proposed settlement class.

### 1. Rule 23(a)(1) – Numerosity

The proposed Settlement Class is sufficiently numerous.  Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  FED. R CIV. P. 23.  This Court has held that a "class does not need a magic number of claimants" nor must the "[plaintiffs] allege the exact number or identity of the class members."  *Cohen v. Chi Title Ins. Co.*, 242 F.R.D. 295, 299 (E.D. Pa. 2007); *see also Gates v. Rohm and Haas*, 265 F.R.D. 208, 215 (E.D. Pa. 2010) (the threshold is approximately 40 class members); *See Jackson v. Southeastern Pennsylvania Trans. Auth.*, 269 F.R.D. 168, 185 (E.D. Pa. 2009) ("it is proper for the court to accept common sense assumptions in order to support a finding of numerosity"); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Based on information provided by Defendants, the proposed Settlement Class consists of approximately 800 individuals.  The numerosity requirement is therefore satisfied.

### 2. Rule 23(a)(2) – Commonality

The Settlement Class also satisfies the commonality requirement.  *See generally Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-2551 (2011).  Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury."  *Wal-Mart*, 131 S. Ct. at 2548, 2551; *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)(noting "commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members").  "Commonality exists when proposed class members challenge the same conduct of the defendants."  *Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D. Pa. 2000).

A finding of commonality does not require that all class members share identical claims as long as there are common questions at the heart of the case. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004) (quotation omitted); *Prudential II*, 148 F.3d at 310; *Baby Neal*, 43 F.3d at 56 (finding "[f]actual differences among the claims of the putative class members do not defeat certification"). "Commonality will not be defeated simply because individual facts and circumstances are important to the resolution of class members' claims." *Contawe v. Crescent Heights of Am., Inc.*, No. 04-cv-2304, 2004 WL 2966931, at *2 (E.D. Pa. Dec. 21, 2004). Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2*). See id.*; see also 1 A. Conte & H. Newberg, *Newberg on Class Actions (Fourth)*, § 3.10 at 272-74 (2002).

Here, commonality exists because the Settlement Class Members' claims are predicated on the core common issue as to whether Defendants failed to satisfy the notice requirements of the tip credit, including the enumerated provisions of Fact Sheet #15. As such, the Settlement Class raises common questions of law and fact which arise from a "common nucleus of operative facts" with respect to their claims against Movie Tavern. *See In re Centocor, Inc. Secs. Litig. III*, No. 98-cv-260, 1999 WL 54530, at *2 (E.D. Pa Jan. 27, 1999). Moreover, Defendants, in connection with this Settlement only, have agreed to certification of the proposed Settlement Class. Thus, this element of Rule 23 is satisfied.

### 3.    Rule 23(a)(3) --"Typicality"

The typicality requirement is met. Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R Civ. P. 23. Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Baby Neal*, 43 F.3d at 57. A plaintiff's claim is typical of a class' claims if it challenges the same conduct that would be challenged by the class. *See, e.g., Ikon*

*Office Solutions, Inc. Litig.*, 191 F.R.D. at 463; *In re Centocor Secs. Litig. III.*, 1999 WL 54530, at *2 (noting that typicality requirement of Rule 23(a)(3) is satisfied where "litigation of the named plaintiffs' claims can reasonably be expected to advance the interests of absent class members"); *see also Southeastern Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 12-cv-0993, 2012 WL 3597179, at *3 (M.D. Pa. Aug. 20, 2012).

"Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory." *Young v. Tri County Sec. Agency, Inc.*, No. 13-cv-5971, 2014 WL 1806881, at *3 (E.D. Pa. May 7, 2014). In other words, typicality is demonstrated where a plaintiff can "show that two issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as those of the unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, n. 36 (3d Cir. 1984). Here, Plaintiff's claims arose from a common course of conduct by Defendants - allegedly failing to properly satisfy all the notice requirements of the tip credit provisions of Section 203(m) of FLSA and Pennsylvania state law. As such, the Plaintiff's claims are typical of the claims of members of the proposed Settlement Class.

### 4.    Rule 23(a)(4) – "Adequacy"

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R CIV. P. 23. "The adequacy requirement encompasses two distinct inquires designed to protect the interests of absentee class members: whether the named plaintiffs' interests are sufficiently aligned with the absentees', and the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. June 26, 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012); *In re Budeprion XL Marketing & Sales Litig.*, MDL No. 2107, 2012 WL

2527021, at *7 (E.D. Pa. July 2, 2012) (noting "[c]lass representatives must be part of the class and possess the same interest and suffer the same injury as the class members.").

The core analysis for the first prong is whether the Plaintiff has interests antagonistic to those of the Settlement Class. The second prong analyzes the capabilities and performance of Class Counsel under Rule 23(a)(4) based upon factors set forth in Rule 23(g). *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007); *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Here, adequacy is readily met, and Plaintiff satisfies both prongs.

First, Plaintiff has no interests adverse or "antagonistic" to absent Settlement Class members. Plaintiff seeks to hold Defendants accountable for, among other things, allegedly failing to pay its Tipped Employees mandated minimum wages for all hours worked. Further, Plaintiff has demonstrated her allegiance and commitment to this Litigation by assisting with the drafting of the Complaint, reviewing the pleadings, and participating in the settlement conference that led to the resolution of this Litigation. As such, Plaintiff's interests are perfectly aligned with the interests of the absent Settlement Class Members, thereby meeting the first adequacy prong.

Second, as discussed in greater detail below, Plaintiff's Counsel is qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation – specifically including wage and hour actions. *See* Wells Decl. ¶¶ 96-107. Moreover, the existence of the elements of adequate representation are presumed, and "the burden is on the defendant to demonstrate that the plaintiff's representation will be inadequate." *Buzoiu v. Risk Mgmt. Alt., Inc.*, No. 03-cv-3579, 2004 WL 1505061, at *5 (E.D. Pa. June 14, 2004).

Accordingly, the adequacy requirement is satisfied.

## B.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER RULE 23(B)

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy.   Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."   *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 594, 623 (1997).   Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication."   *In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*, 148 F.3d at 316. Here, Plaintiff readily meets both requirements.

The predominance requirement "does not demand unanimity of common questions," it merely requires that the common questions outweigh individual questions.   *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 254 (E.D. Pa. 2006) (citing *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d Cir. 2001)).   Moreover, the Supreme Court has held that Plaintiffs need not show that every element of Plaintiffs' claims can be proven with class-wide evidence: "Rule 23(b)(3) … does not require a plaintiff seeking class certification to prove that each ʹelemen[t] of [her] claim [is] susceptible to classwide proof.   What the rule does require is that common questions ʹpredominate over any questions affecting only individual [class] members.ʺ   *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (internal citation omitted).   The law is not that every issue or element must be proven with class-wide evidence but only that common evidence must predominate in the case as a whole.   Here, the requirements of Rule 23(b)(3) are clearly met.

First, common questions of law and fact readily predominate.   When common issues present a significant aspect of the case, and they can be resolved for all members of the class in a

single adjudication, there is clear justification for handling the dispute on a representative basis rather than on an individual basis.  *Local Joint Exec. Bd. v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001), cert. denied, 534 U.S. 973 (2001).  Settlement Class members' claims arise out of Defendants' alleged policies and procedures regarding the taking of a tip credit and the conveyance of this fact by Defendants to its employees.  Defendants' alleged practices did not vary with regard to individual Settlement Class members.  Additionally, Settlement Class members' claims seek remedy of "common legal grievances" – namely, minimum wages for all hours worked.  This presents common operative facts and common questions of law that predominate over any factual variations.

Second, a Rule 23 certification of the Settlement Class, in the context of settlement, is also "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R Civ. P. 23.  Absent class certification here, many putative Settlement Class members would go uncompensated for Defendants' alleged wrongdoing.  *See e.g.*, *MacNeal v. Columbine Exploration Corp*., 123 F.R.D. 181, 187 (E.D. Pa. Dec. 1, 1988) (finding superiority where individual class members "have small interests, and individually they might not have the wherewithal to bring suit to protect their individual rights.").  Requiring all of Defendants' Tipped Employees to file individual lawsuits would needlessly waste judicial resources because each lawsuit would likely involve the same evidence concerning Defendants' alleged wrongdoing – resulting in the potential filing of nearly 1,000 lawsuits each alleging virtually identical claims.  Thus, resolving the Settlement Class members' claims in a single, consolidated settlement proceeding is far superior to individual adjudication of their claims.

Indeed, the Settlement Agreement provides the Settlement Class members with an ability to obtain prompt, predictable, and certain relief.  In contrast, individualized litigation carries with

it uncertainty, risk, and costs, and provides no guarantee that any injured Settlement Class member will obtain necessary and timely relief at the conclusion of the litigation process. The proposed Settlement would also relieve judicial burdens that would be caused by adjudication of the same issues. Further, strictly for settlement purpose only, Defendants do not oppose Rule 23 class certification of the Settlement Class. Accordingly, the Court should enter an order certifying the Settlement Class for settlement purposes only.

Finally, as set forth in the Settlement Agreement, only Participating Settlement Class Members will be deemed to have released their claims under the FLSA. The Class Notice apprises the Settlement Class Members of this provision and the Claim Form states in full the releases contained in the Settlement Agreement. That this case involves both FLSA and state law claims does serve as a bar to its resolution. Indeed, the Third Circuit held that FLSA claims and state law claims could be asserted in the same action. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012). Further, the fact that the Claim Form serves as a consent to join form and fully advises individuals that by joining they will be releasing both their state claims and their FLSA claims has been permitted by courts across the country. *See, e.g., In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, Master File: 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009); *Bergman v. Kindred Healthcare, Inc., et al.*, No.: 1:10-cv-00191 (N.D. Ill.)(approving Rule 23 settlement where participating class members released both their state and FLSA wage claims); *see also Faile v. Lancaster County*, No. 0:10-cv-02809, 2012 U.S. Dist. LEXIS 189610 (D. S.C. Mar. 8, 2012)(approving settlement where the settlement fund was allocated to account for separate payments for Rule 23 class members and individuals who opted-in under the FLSA).

### C.   CLASS NOTICE SATISFIES RULE 23 & DUE PROCESS

"Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . .." Manual for Complex Litigation, §21.312. The notice of the proposed Settlement "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 Ed. 865, 70 S. Ct. 652 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.").

Here, the form and method of notice plainly satisfied all due process considerations and met the requirements of Fed. R. Civ. P. 23(e)(1). In accordance with the Court's Preliminary Approval Order, as well as the terms of the Settlement Agreement, the Claims Administrator mailed the approved Notice of Class Action Settlement to 782 potential Class Members at each individual's last known address. *See* Declaration of Brian S. Devery ("Devery Decl.") at ¶¶5-7. Of this amount, it appears that only 67 Class Members had stale addresses to which the Notice could not be forwarded. *Id.* at ¶ 15. This yields a very low undeliverable rate and, in any event, a rate well below what has been seen in other class actions. In addition, email addresses were obtained for 250 Class Members, and the Notice was additionally emailed to these individuals. *Id.* at ¶8. Additionally, the Class Notice was posted on an internet website (maintained by the Claims Administrator), and was also posted in each of Defendants' locations within the Commonwealth of Pennsylvania.

The Class Notice utilized here provided Settlement Class Members with all the pertinent information regarding the Lawsuit and the Settlement.   The Class Notice fully informed Settlement Class Members of the Action, the proposed Settlement and the information they need to make informed decisions about their rights.   The Class Notice provided detailed information about the Settlement, including: (1) the essential terms of the Settlement, including how to make a claim for a portion of the Settlement's proceeds; (2) Settlement Class Members' rights with respect to the Settlement, including their right to object or exclude themselves; (3) detailed information about the Released Parties and the Released Claims; (4) information about the date of the Final Approval Hearing; (5) information regarding Class Counsel's motion for attorneys' fees and reimbursement of litigation expenses; and (6) the proposed Service Payment for the Plaintiff.   In sum, the Class Notice provided specifics on the date of the Final Approval Hearing, Settlement Class members' rights to object or opt-out of the Settlement (and deadlines and procedures for doing so), and the procedure to receive additional information.

In addition, the Class Notice also provided Settlement Class members with contact information for Class Counsel.   As a result, Class Counsel have received numerous phone calls from Settlement Class Members.   *See* Wells Decl. ¶ 49.   This inarguably demonstrates that the Settlement Class was adequately informed of – and utilized – the methods to seek additional information if they felt they needed such information.

Similar notice plans have been successfully used in other class action settlements.   *See In re Flonase Antitrust Litigation*, No. 08-cv-3149, 2013 WL 2915606, at *13 (E.D. Pa. June 14, 2013).   Indeed, the Court already found the direct-mail Class Notice was adequate to inform Settlement Class Members of the terms of the proposed Settlement and how to lodge an objection, and obtain additional information, and endorsed the Class Notice in its Preliminary

Approval Order.   (Dkt. No. 37).   In Class Counsel's view, the notice plan utilized in this Litigation meets or exceeds the standards for due process and Rule 23.   Now that Class Counsel and the Claims Administrator have effectuated the Notice pursuant to the Court-approved plan, this Court should finally hold that the Class Notice was adequate.

## V.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.     THE STANDARDS FOR FINAL APPROVAL

The settlement of class action litigation is favored and encouraged in the Third Circuit. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise would linger for years").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of class actions.   When a proposed class settlement is reached, it must be submitted to the Court for approval.   H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"); *Oslan*, 232 F. Supp. at 439-40.   Preliminary approval is the first of three steps comprising the approval process for settlement of a class action.   The second step is the dissemination of notice of the settlement to all Class members.   Finally, there is a

settlement approval or final fairness hearing.  *See* Manual for Complex Litigation § 21.632-633 (4th ed. 2004).

The Third Circuit has stressed that the most relevant consideration is whether the proposed settlement is within a "range of reasonableness" in light of all costs and risks of continued litigation; that is, the test is whether the proposed settlement is fair and reasonable under the circumstances.  *In re Prudential,* 148 F.3d at 322.  To determine whether a settlement is fair, reasonable and adequate under Rule 23(e), courts in the Third Circuit apply the nine-factor test enunciated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), which was reaffirmed in *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 534-35 (3d Cir. 2004).  These factors are:

1)  The complexity, expense, and likely duration of the litigation;

2)  the reaction of the class to the settlement;

3)  the stage of the proceedings and the amount of discovery completed;

4)  the risks of establishing liability;

5)  the risks of establishing damages;

6)  the risks of maintaining the class action through the trial;

7)  the ability of the defendant to withstand a greater judgment;

8)  the range of reasonableness of the settlement fund in light of the best possible recovery; and

9)  the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 156-57.

Class Counsel believe the terms of the proposed Settlement in this case are fundamentally fair, reasonable and adequate, and achieve the goals envisioned by the FLSA and PMWA,

especially when considering the risk, expense, complexity and delay associated with further litigation.   In making its determination of these risks, the Court should give deference to the opinions of counsel, who have researched the issues and are familiar with the facts of the litigation.   *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995)("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class."); *Lake v. First Nationwide Bank,* 900 F.Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class.'").

As explained below, the application of the *Girsh* factors unequivocally demonstrates that the proposed Settlement is fair, reasonable and adequate.

### 1.      Complexity, Expense, And Likely Duration Of The Litigation

This factor is concerned with assessing the "'probable costs, in both time and money, of continued litigation.'"   *Pro v. Hertz Equipment Rental Corp.*, No. 06-cv-3830, 2013 WL 3167736, at *3 (D.N.J. June 20, 2013) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 234 (3d Cir. 2001)).   Here, the probable costs of continued litigation with respect to both time and money are high.   This litigation has been diligently litigated by both sides.   Much work has been done, including but not limited to: review of documents produced informally, full written discovery, interviews and other fact gathering, legal research and comparison of analogous cases. If the Settlement is not approved, additional litigation will be required, with no guarantee there will be any extra benefit to the Settlement Class.

Moreover, the Settlement Class faced the prospects of Defendants vigorously contesting class certification.   The costs associated with this motion (in conjunction with the attendant risks of losing certification discussed below) counsel in favor of approving the Settlement.   A trial on

the merits, and preparing for the same, would entail considerable expense on both sides.  The result would not necessarily end the litigation, giving the right of the losing party to appeal.  All of these facts weigh in favor of the settlement.  *See In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 642 (E.D. Pa. 2003)(noting that the "protracted nature of class action antitrust litigation means that any recovery would be delayed for several years," and "substantial and immediate benefits" to class members favors settlement approval); *Slomovics v. All for a Dollar, Inc.,* 906 F. Supp. 146, 149 (E.D.N.Y. 1995)(where litigation is potentially lengthy and will result in great expense, settlement is in the best interest of the class members).

Accordingly, this factor warrants the granting of final approval of this proposed Settlement.

### 2.      Reaction Of The Class To The Settlement

Pursuant to the Court's Order granting preliminary approval, as well as the terms of the Settlement Agreement, the deadline for Class Members to object or to exclude themselves from the Settlement Agreement has now passed.[5]  Class Counsel has received no objections to the Settlement, and only 8 out of 782 potential Settlement Class Members have indicated that they intend to opt out of the Settlement, representing around 1 of those receiving Class Notice.  The complete lack of objections, and paucity of opt-outs indicate approval by the Class Members, and weigh in favor of final approval.  *See Varacallo v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 207, 237-38 (D.N.J. 2005) (finding exclusion and objection requests of .06% and .003%, respectively, "extremely low" and indicative of class approval of the settlement); *In re Schering-Plough Corp.*, No. 08-1432, 2012 U.S. Dist. LEXIS 75213, *12 (D.N.J. May 31, 2012)(noting

---

[5] The Class Notice, which was approved by the Court in its Order granting preliminary approval, clearly informed all prospective Class Members that the Notice Response Deadline was sixty days after the mailing of Class Notice. The Claims Administrator mailed each Class Notice on April 1 2016, which is more than sixty days from the date of this filing.  *See* Devery Decl. at ¶ 7.

lack of objections and finding "silence constitutes tacit consent to the agreement . . . . and is entitled to nearly dispositive weight" regarding whether the settlement is fair, reasonable and adequate); *see also In re Janney Montgomery Scott*, 2009 U.S. Dist. LEXIS 60790, *25 (finding that no objections and only 10 requests for exclusion from a class of 1310 individuals "weighs greatly in favor of approving the settlement").

### 3.    Stage Of The Proceedings And The Amount Of Discovery Completed

As noted above, the parties have engaged in significant discussions regarding the validity of Plaintiff's claims, which included the review of documents Defendants believed mitigated or eliminated Plaintiff's claims (such as their Tip Credit Notification Form).  Further, Defendants produced significant payroll data prior to the second settlement conference, allowing Plaintiff to develop a comprehensive damage model.  Moreover, the proposed settlement is the result of arm's-length negotiations including two formal settlement conferences between the Parties under the auspices of a magistrate judge.  The participation of Magistrate Judge Heffley insured that the settlement negotiations were conducted at arm's length and without collusion between the parties.  *See, e.g., Bernhard v. TD Bank, N.A.,* No. 08-4392, 2009 U.S. Dist. LEXIS 92308, *5 (D.N.J. Oct. 5, 2009); *D'Amato v. Deutsche Bank* , 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Tiro v. Public House Invs*., LLC, 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013), citing *In re Citigroup Inc. Bond Litigation*, 2013 U.S. Dist. LEXIS 117838, (S.D.N.Y. Aug. 20, 2013) ("Additionally, whereas here, the settlement is the by-product of a mediation before an experienced employment law mediator, there is a presumption of fairness and arm's-length negotiations.")

Accordingly, this factor also weighs in favor of approval of the settlement.  *See Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105, 115 (E.D. Pa. 2005)(finding that the *Girsh* factor

satisfied where the parties "gained such an appreciation through their exchange of some discovery" and participation in the mediation process); *Rouse v. Comcast Corp.*, No. 14-1115, 2015 U.S. Dist. LEXIS 49347, *20 (E.D. Pa. Apr. 14, 2015)(finding *Girsh* factor satisfied where ten months of litigation included "extensive research and preparation," "numerous discussions with the Class Representative," and the collection and review of "payroll records to investigate the factual support for the legal claims").

### 4.  Risks Of Establishing Liability And Damages (*Girsh* factors 4 and 5)

"These inquiries survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Ikon*, 209 F.R.D. at 105 (*quoting In re Prudential Ins. Co., Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 319).  The *Ikon* court went on to explain:

> For example, if it appears that further litigation would realistically risk dismissal of the case on summary judgment or an unsuccessful trial verdict, it is in the plaintiffs' interests to settle at a relatively early stage. In contrast, if it appears that liability is extraordinarily strong, and it is highly likely that plaintiffs would prevail at trial, settlement might be less prudent. On this issue, the court should avoid conducting a mini-trial and must to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action. *LaChance,* 965 F. Supp. at 638.

In the instant matter, class certification and liability would clearly be hotly contested issues.  Further, Defendants would have argued that proof of any liability would require an individual class member by class member fact inquiry.  That Defendants maintained multiple locations in the Commonwealth, each operating under a different manager, would have only further compounded these issues.  Moreover, Defendants believe they took sufficient measures to satisfy the notification requirements of the tip credit and adamantly deny that they failed to properly pay any current or former employee, including the Plaintiff.  It is Class Counsel's

considered opinion that settlement on the proposed terms at this juncture in the case, given the potential downside risks, upside rewards and concomitant costs of going forward, is the most prudent course for Plaintiff and the Settlement Class to take.

### 5.      Risks Of Maintaining The Class Action Through The Trial

A district court in this Circuit evaluating a settlement noted that:

> The value of a class action depends largely in the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits.  Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

(*General Motors*, 55 F.3d at 817).

Although it is Plaintiff's strong belief that certification of her proposed class would have been granted by the Court, there was certainly cause for doubt.  Indeed, Defendants would likely have argued that whether each Tipped Employee was properly notified regarding the tip credit would require an individual inquiry.  Based on Plaintiff's counsel's experience in these kinds of cases, and Defendants' prior assertions, it is clear that Defendants would have vigorously opposed class certification.  The risks associated with class certification increase the risk of maintaining the proposed class, and therefore supports final approval of the Settlement.  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (concluding settlement was appropriate because defendants may contest class certification "thereby creating appreciable risk to the class members' potential for recovery"); *Rouse*, No. 14-1115, 2015 U.S. Dist. LEXIS 49347, *20 (settlement appropriate because any challenge to class certification "would increase both the length and expense of litigation").

### 6.      Ability Of The Defendant To Withstand A Greater Judgment

Plaintiff does not believe Defendants' ability to pay was an issue in the settlement negotiations and thus, this *Girsh* factor is neutral.  *See In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. at 489; *Serrano v. Sterling Testing Systems, Inc.,* 711 F. Supp.2d 402, 416 (E.D. Pa. 2010) ("no evidence regarding [defendant's] ability (or inability) to withstand a greater judgment.  As such, this factor is neutral.").

### 7.      Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation (*Girsh* factors 8 and 9)

"This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case."  *General Motors*, 55 F.3d at 806.  In *General Motors*, the Third Circuit further explained that:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id*. (citation omitted.)

As previously discussed the proposed Settlement confers a substantial benefit on the Class.  Moreover, Defendants have begun to take proactive measures to ensure that all Tipped Employees understand Defendants' compensation structure, including the tip credit, and to ensure that all Tipped Employees are aware that Defendants have always sought to comply with the tip credit notification provisions.  In short, Defendants' prophylactic measures should not impede this Settlement, rather they counsel in favor of its endorsement.  *Serrano*, 711 F. Supp.2d at 417 (granting final approval of a settlement that provided for, inter alia, defendant's "cessation

of the allegedly unlawful practice" and noting that the settlement thus "provides a societal benefit as well.").

Consequently, this factor also favors preliminary approval of the proposed settlement.

### B.   THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS

Defendants have agreed to pay a Settlement Amount of $750,000.00 out of which Participating Settlement Class Members will be paid, based on the number of hours they worked during the Class Period.   The precise amount will be determined once the final number of Participating Settlement Class Members is known, and the Court has ruled on Class Counsel's request for legal fees and costs, which is being filed contemporaneously with this motion for final approval.   Importantly, Plaintiff's counsel negotiated the Settlement to meet all the requirements of the FLSA collective action provisions, and the class action provisions of Rule 23, and specifically to provide an administrative process that assures Settlement Class Members equal and sufficient due process.   As described above, each Participating Settlement Class Member will receive a portion of the Settlement Amount based on the amount of alleged damages they specifically incurred (e.g., the number of hours they worked).   Thus, the more hours an individual Participating Settlement Class Member worked, relative to his or her colleagues, the greater his or her share of the Settlement's proceeds.   Although this provides an excellent recovery, any Class Member had the right to opt-out of the Settlement.

Further, the Settlement does not unduly grant preferential treatment to the Plaintiff.   She is instead offered, subject to the Court's approval, a reasonable Service Payment that recognizes the added contribution she made to the prosecution of the litigation, including the burden and risks associated with bringing this action publicly.   Because of her individual efforts, Participating Settlement Class Members will receive significant benefits from the Settlement. Indeed, courts in this Circuit regularly approve incentive payments in class action suits when

such awards are authorized by the settlement and disclosed in the class notice. *See In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 486 (E.D. Pa. 2010); *Briggs v. Hartford Fin. Serv. Grp., Inc.*, No. 07-cv-05190, 2009 WL 2370061, at *16 (E.D. Pa. July 31, 2009); *In Re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 422, 490 (E.D. Pa. 2008); *Serrano v. Sterling Testing Sys.*, 711 F. Supp. 2d 402, 424 (E.D. Pa. 2010).

The Parties have agreed that Plaintiff's counsel will petition the Court for a Service Payment to Plaintiff Tianna Kotchmar of $5,000.  Defendants have agreed not to object to this request.  This Service Payment is reasonable in light of the work performed by Plaintiff in assisting in the prosecution of this matter (including assisting with the drafting of the Complaint, and attending one of the settlement conferences).  Moreover, the Service Payment is consistent with other incentive awards granted in similar cases. *See, e.g., Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821, at *6 (E.D. Pa. Jan. 24, 2011) (approving an incentive award in the amount of $10,000); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Prac. Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (approving up to $10,500 as enhancements awards).

Pursuant to the proposed Settlement Agreement, prior to a final approval hearing, Class Counsel will file a motion seeking an amount not to exceed 33 1/3 percent of the Settlement Amount as a fee award, inclusive of reimbursement of all reasonable litigation expenses incurred.  "The court is required to thoroughly review the reasonableness of attorneys' fees in all class action settlements." *Bonett v. Educ. Debt Servs.*, No. 01-6528, 2003 U.S. Dist. LEXIS 9757 at *25 (E.D. Pa. May 9, 2003).  Notably, Class Counsel is seeking only a fee award of thirty percent (30%) of the Settlement Fund, inclusive of its expenses.  Here, an award of thirty percent of the Settlement Amount is reasonable.  Additionally, although not the case here, courts in this district have approved as reasonable proposed attorneys' fees and expenses that were

significantly higher than the remaining settlement funds for the class.  *See Bonett*, 2003 U.S.
Dist. LEXIS 9757 *26; *See also Oslan*, 232 F. Supp 2d at 444 (E.D. Pa. 2002)(No rule of strict
proportionality requiring decrease in attorneys' fees in order to match successful judgments or
settlement awards.").

 Most importantly, Plaintiff's counsel's allowance to seek up to 33 1/3 percent of the
Settlement Amount in fees and for reimbursed expenses is plainly documented in the attached
proposed Class Notice, and no Class Member objected to this amount.  Plaintiff's counsel will be
fully prepared to substantiate their fee request at the final approval hearing.

## VI. CONCLUSION

 The proposed settlement provides a fair, reasonable and adequate award to Plaintiff and
the proposed Settlement Class, and puts an end to this Litigation.  Accordingly, final approval
should be granted.  The proposed Class satisfies the requirements of Rules 23(a) and Rule
23(b)(3), and should be certified as a settlement class.  For the foregoing reasons, Plaintiff
respectfully requests that the Court: (1) grant final approval of the Settlement; and (2) certify, for
settlement purposes only, Plaintiff's claims pursuant to FED. R. CIV. P. 23(b)(3).

Dated: May 25, 2016     Respectfully submitted,

      **CONNOLLY WELLS & GRAY, LLP**

      */s/ Gerald D. Wells, III*
      Gerald D. Wells, III, Esquire
      2200 Renaissance Blvd., Suite 308
      King of Prussia, PA 19406
      Telephone:  (610) 822-3700
      Facsimile:  (610) 822-3800
      Email: gwells@cwg-law.com

      **KALIKHMAN & RAYZ, LLC**
      Arkady "Eric" Rayz, Esquire

1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone:  (215) 364-5030
Facsimile:  (215) 364-5029
E-mail: erayz@kalraylaw.com

*Counsel for Plaintiff and the Proposed Class*